POWELL *v.* SOUTH BEND PLANTATION, INC.

4-9661                                                    245 S. W. 2d 562

Opinion delivered January 21, 1952.

Rehearing denied February 25, 1952.

*W. A. Leach,* for appellant.

*DuVal L. Purkins,* for appellee.

ROBINSON, J. The principal issue involved here is the construction of a written rental contract between appellants, H. E. Powell, Carl O. Powell and Clifton M. Powell, partners, on the one hand, and Neely Bowen and Homer Albro, on the other. Bowen and Albro assigned their interest in the contract to South Bend Plantation. Hence, that Company was plaintiff, is now appellee, and is hereinafter called "South Bend." The Powells, hereinafter called "Powell," along with the Rice Growers' Bank, are appellants.

South Bend gave the Rice Growers' Bank authority to endorse checks made payable to South Bend during 1948 and pay the same to Powell. South Bend contends that the Rice Growers' Bank exceeded its authority by handling the 1949 checks in the same manner. We agree with the appellee and hold that the Bank is liable to South Bend to the extent that the Powells are herein held to be liable.

Bowen and Albro owned farm lands in Chicot County which had been used principally in growing cotton. They wanted to convert the use of these lands to growing rice, an expensive undertaking, but they did not have the necessary money. Neither of them was experienced in raising rice. They contacted Powell, who was an experienced rice-grower, and entered into an agreement with him to put the land in rice. A contract was prepared in South Bend's office in Memphis, where it was signed by the parties. The contract is as follows:

"Mr. Horace Powell
Wheatley, Arkansas

"Dear Horace:

"Neely Bowen and I have agreed to rent you for three years 300 acres more or less of the Rogers place in Chicot County, according to the survey of Tom Fricke,

which you are to put in rice, plus 150 acres on the west side of Bayou Macon and are to pay us one-sixth of the rice each year as rent, and we are to pay one-sixth of the hauling and drying; you are to put in the canals, the pipes, pumps, and installations of the motors, etc.; to remove stumps that have to be removed. We are to assign to you the AAA money. From the 1948 rent we are to reimburse you for all pipes, pumps and installations of the motors and costs of removing stumps. Any new ground which you may clear or remove the stumps from you are to have rent free for three years; but this privilege does not extend beyond the life of this agreement. In case we have an offer to sell the property, you are to have the refusal at the same price and terms as are offered. We are to pay all costs of bean poisoning, canals and road ditch.

"We have agreed to rent you the property known as Ditch Bayou and to get as rent for the oat land one-half of the oats and are to pay for one-half of the fertilizer and one-half of the hauling. In addition to the oat land you are to put in approximately 200 acres of soy beans and as rent for this we are to get one-fourth of the beans less 10% to you for supervising the crop.

"I have sent $500 for the first payment on stock in the McGehee Drying Association and will send the other $500 when it is requested. We will pay for the surveying of the rice land and staking of the canals.

"The purchase contract covering the above lands has been signed; the abstracts are ordered, but deeds have not passed. As soon as this transaction is completed we will draw a formal agreement with you and sign it. In the meantime this letter will give you the authority you need to go on the land and do the necessary work. If you will let us know when you want Fricke to complete the work, we will advise him to get in touch with you and make a date to meet you on the property.

"/s/ Neely Bowen

"/s/ Homer Albro."

Powell spent, under the terms of the agreement, $13,001.98 in 1948, and $841.97 in 1949. However, in-

cluded in this sum were a few items authorized by South Bend and not included in the written contract. Powell contends that he was to be repaid the entire amount he spent on the improvements even if it took all of the rent money for the three years duration of the agreement. South Bend contends that Powell was to receive only the amount of the first year's rent as payment in full for the improvements.

The Chancellor made a finding that Powell had spent $13,001.98 on the improvements in 1948, but, of that amount, the cost of equipment and canals totaling $10,289.99 was off-set in full by the rents amounting to $8,065.91, leaving South Bend owing Powell only $2,711.99 at the end of 1948, less $200 for water Powell used on rice on 40 acres, known as the Williams place, adjoining the South Bend property, on which Powell also raised rice. (One-sixth of the rice raised on the Williams place in 1949 was allowed South Bend for water furnished in 1949). The Chancellor allowed Powell $841.97 for improvements in 1949. South Bend was paid in cash $1,405.84. When figured this way, it adds up to Powell owing South Bend $2,790.16. A decree was rendered for that amount. We cannot agree with that part of the decree which entirely off-sets $10,289.99 of the money spent by Powell in 1948 with rents amounting to only $8,065.91.

According to the agreement, South Bend was to pay for all pipes, pumps, installations of motors, cost of removing stumps, cost of bean poisoning, canals, road ditch, surveying of rice land and staking of canals. The property was rented for three years. Nothing was said in the agreement as to when South Bend would reimburse Powell for the money he would spend on these improvements, with the exception of the pipes, pumps, installations of motors, and cost of removing stumps. It was specifically provided that these items would be paid out of the 1948 rent. The cost of the things mentioned to be paid out of the 1948 rent came to $187 for the stumps and $6,558.49 for pipes, pumps and installations of motors, making a total of $6,745.49. The rent

for 1948, one-sixth of the rice, amounted to $8,065.91. Hence, the 1948 rent was suffiicent to pay for the items that the contract provides should be paid for out of the rent for that year, and, when the entire 1948 rent is credited against the $13,001.98 spent by Powell for improvements, and South Bend is given credit for $200 for water used on the Williams place, it leaves South Bend owing Powell $4,735.51 at the end of 1948.

The Chancellor found there was $841.97 spent by Powell in 1949 for improvements and South Bend was paid $1,405.84 in cash. These two items, when properly charged against South Bend and added to $4,736.07, which South Bend owed at the end of 1948, make a total of $6,983.88 owed by South Bend to Powell at the end of 1949. The rents owed by Powell to South Bend for 1949 amount to $7,549.96, and when the $6,983.88 is deducted from the $7,549.96, it leaves a balance of $566.04 South Bend is entitled to recover. Without abstracting the evidence, which including the exhibits is voluminous, we mention some salient points sustaining the view that the parties did not intend that the 1948 rent alone should pay for the equipment and canals, as found by the Chancellor, or should pay for the entire cost of the improvements as contended by appellee.

South Bend alleges that Powell is insolvent. However, no evidence was introduced on that point, but, be that as it may, Powell is certainly experienced in growing rice, having been so engaged since 1919. At the time he rented the South Bend place, he was already working land in the immediate vicinity. He was bound to have known the approximate cost of making the improvements he agreed to make. Also, he must have known what he could expect the land to yield. It is not likely he would agree to put in improvements for one year's rent that would cost almost twice as much as the value of the rent.

The agreement between the parties provided that should South Bend decide to sell the property, Powell would have the option of buying it at the best price offered from any other source. South Bend did decide to sell and offered the property to Powell at the price

that they had been offered. Powell turned it down. The price received by South Bend was about $20 per acre including all the improvements put in by Powell. The value of the place sheds some light on the matter. The record does not show the number of acres in the place, but Powell put in about 450 acres of rice, from which South Bend received as rent for two years $13,843.95 in permanent improvements, $1,405.84 in cash, and is owed a balance of $566.08, making a total of $15,815.87 for two years' rent. In view of the value of the land, it is not likely they expected to get more.

Lastly, the contract itself plainly sets out certain specifically named items that are to be paid out of the 1948 rent. It does not provide that the 1948 rent shall be payment in full for all of the improvements, or payment in full for the equipment and canals.

The decree is reversed with directions to render a decree for the appellee in the sum of $566.08 with interest from January 1, 1950.

The Chief Justice would affirm the decree; Mr. Justice WARD concurs.